***********
The undersigned have reviewed the prior Opinion and Award based upon the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. The Full Commission affirms the prior Opinion and Award of the Deputy Commissioner with modifications concerning plaintiff's entitlement to benefits, plaintiff's average weekly wage and defendant's entitlement to a credit. Accordingly, the Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as a matter of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. Plaintiff's date of injury is May 22, 1998.
2. On that date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On that date, an employer-employee relationship existed between the parties.
4. North Carolina State University is self-insured with Key Risk Management Services as the administering agent on the risk.
5. Industrial Commission Forms 18, 19, 21, 26, 61, 33 and 33R are a part of the evidentiary record in this case as the parties stipulated that judicial notice could be taken of all Industrial Commission Forms.
6. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter.
7. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
8. The following exhibits have been stipulated into evidence:
 (a) Stipulated Exhibit #1 — Plaintiff's medical records
 (b) Stipulated Exhibit #2 — Three letters concerning plaintiff's complaints to defendant-employer of back problems following her injury
 (c) Stipulated Exhibit #3 — Industrial Commission forms as noted above
 9. The contested issues listed by the parties which were to be determined by the Deputy Commissioner included:
(a) To what benefits is plaintiff entitled?
 (b) Is plaintiff's back condition causally related to the admittedly compensable fall, which fractured her wrist?
 10. The depositions of Dr. Edward Yellig, Dr. T. Craig Derian, and Dr. George Venters were received into the evidentiary record.
 ***********
Based upon all the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years of age with a college degree in Spanish. Plaintiff's work history includes working in a hospital, working at Duke University's library and working as a library assistant for defendant-employer for 22 years.
2. Plaintiff's medical history includes high blood pressure, arthritis, and right thumb surgery due to an arthritic condition nine years prior to the hearing before the Deputy Commissioner. None of these conditions affected plaintiff's ability to work. Furthermore, plaintiff has no history of prior back problems.
3. On May 22, 1998, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of her employment with defendant-employer when she fell on a wet floor, catching herself with her right hand and falling on the right side of her posterior. Thereafter, defendant accepted liability for plaintiff's wrist injury. Consequently, permanent partial disability compensation was voluntarily paid for plaintiff's wrist injury.
4. Later in the evening on the date of the injury by accident, plaintiff's low back began aching. This pain eventually radiated into her right leg. Dr. Ayscue with Blue Ridge Primary Care who treated plaintiff's wrist initially saw plaintiff. Thereafter, on May 27, 1998, plaintiff was seen by her family physician, Dr. Edward Yellig, an internist. Plaintiff was subsequently referred to Dr. Krakauer for her wrist pain. Although Dr. Krakauer did not treat plaintiff for any back complaints, the intake form completed in his office on June 3, 1998 indicates that plaintiff was experiencing low back pain at the time.
5. Dr. Yellig continued to treat plaintiff for her back complaints and recommended physical therapy and an MRI. In addition, x-rays of plaintiff's back taken June 8, 1998 revealed degenerative disc disease at L4-5 and L5-S1.
6. By September 14, 1998, Dr. Yellig diagnosed plaintiff with fibromyalgia and degenerative disc disease of the lumbosacral spine. He also prescribed Prozac to treat plaintiff's depression. By February 19, 1999, Dr. Yellig thought that plaintiff suffered from chronic fatigue syndrome.
7. Dr. Yellig opined that plaintiff's low back symptoms and fibromyalgia were caused by the fall on May 22, 1998. It is his opinion that plaintiff's pre-existing back condition was aggravated by the fall and that the fall was a significant contributing factor in the development of her low back symptoms.
8. During his deposition, Dr. Yellig initially testified that the plaintiff was permanently and totally disabled. However, Dr. Yellig also testified that plaintiff could work between two to six hours per day with limited time and exertion and limited demands for speed and productivity. Once presented with the definition of permanently and totally disabled as "an inability to earn wages", Dr. Yellig ultimately opined that plaintiff was not permanently and totally disabled.
9. Upon referral from Dr. Yellig, plaintiff presented to Dr. T. Craig Derian, an orthopedic surgeon, on July 1, 1999. Dr. Derian ordered an MRI, which revealed that plaintiff had multiple level disc degeneration of the low back with no definite disc rupture or spinal stenosis. Dr. Derian found plaintiff to be at maximum medical improvement with a ten percent permanent partial disability of the back. He also found plaintiff capable of performing light duty work with frequent position changes and a fifteen-pound lifting restriction.
10. According to Dr. Derian, the symptoms for which he treated plaintiff were related to her fall of May 22, 1998 and plaintiff's fall aggravated her pre-existing, non-symptomatic degenerative disc condition. Dr. Derian also indicated that plaintiff may continue to experience some waxing and waning of her pain symptoms.
11. Plaintiff was seen by Dr. George Venters, an orthopedic surgeon, on July 27, 1999 for an independent medical examination. Dr. Venters indicated that the fall of May 22, 1998 did not cause plaintiff's degenerative disc disease and that no further active treatment was needed. He had a difficult time assessing a permanent partial impairment rating based on plaintiff's subjective complaints, but he did indicate that plaintiff's permanent partial disability rating would be somewhere between five and ten percent. Dr. Venters also recommended that plaintiff avoid repetitive lifting and bending.
12. Throughout her medical treatment following her injury by accident of May 22, 1998, plaintiff continued to work in her regular job. Following the injury by accident of May 22, 1998, plaintiff demonstrated an ability to continue to earn wages. Accordingly, plaintiff is not permanently and totally disabled as a result of any injuries or conditions relating to her injury by accident. However, plaintiff has missed time from work due to her May 22, 1998 injury by accident. Regardless of the fact that plaintiff was paid her full salary for any time she missed from work during the period of June 1998 through June 1999, plaintiff was unable to earn wages for this time and was paid sick leave or vacation leave which are vested benefits and are distinguishable from benefits paid pursuant to an employer-funded disability plan.
13. As a result of her injury by accident of May 22, 1998, plaintiff incurred medical treatment for her wrist, back and for treatment of fibromyalgia, which was causally related to the injury by accident. As a result of the injury by accident of May 22, 1998, plaintiff sustained a ten percent permanent partial disability of her back.
14. According to the IC Form 21 approved by the Commission on March 16, 2000 and the IC Form 26 approved by the Commission on April 14, 2000, plaintiff's average weekly wage is $520.80 and her weekly compensation rate is $347.22.
15. Defendant's defense of this claim was reasonable.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission finds as follows
 CONCLUSIONS OF LAW
1. On May 22, 1998, plaintiff sustained an admittedly compensable injury by accident arising out of and within the course of her employment with the defendant-employer. As a result of the injury by accident of May 22, 1998, plaintiff sustained injuries to her right wrist and low back and developed symptoms of fibromyalgia for which plaintiff required medical treatment. N.C.G.S. § 97-2(6); N.C.G.S. § 97-25.
2. Although plaintiff continues to work and was paid her full salary during work hours that she missed as a result of the injury by accident of May 22, 1998, she is nevertheless entitled to temporary total disability compensation for the time that she was incapable of earning the same or greater wages and received sick or vacation leave, as this leave is vested and distinguishable from benefits paid pursuant to an employer-funded disability plan. Accordingly, defendant is not entitled to a credit. N.C.G.S. § 97-29; § 97-42; § 97-6; § 97-7
and Estes v. N.C. State University, 102 N.C. App. 52, 401 S.E.2d 394
(1991); Christopher v. Cherry Hospital, ___ N.C. App. ___, 556 S.E.2d 298 (NO. COA00-700 filed 7 August 2001).
4. Plaintiff has failed to prove that she is permanently and totally disabled as a result of her injury by accident of May 22, 1998 and is therefore not entitled to permanent and total disability compensation. N.C.G.S. § 97-29.
5. As a result of the injury by accident of May 22, 1998 and the resultant injuries and aggravation of plaintiff's pre-existing medical condition sustained therein, plaintiff sustained a ten percent permanent partial disability of the back, thereby entitled plaintiff to thirty weeks of permanent partial disability compensation at the rate of $347.22 per week. N.C.G.S. § 97-31.
6. Subject to the limitations of N.C.G.S. § 97-25.1, plaintiff is entitled to payment of all reasonably necessary medical expenses incurred or to be incurred as a result of her admittedly compensable injury by accident of May 22, 1998, for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability, including medical treatment for fibromyalgia symptoms with Dr. Yellig. N.C.G.S. § 97-25; N.C.G.S. § 97-25.1.
7. Plaintiff is not entitled to submit new evidence that concerns the issue of change of condition which is more appropriate for a full evidentiary hearing. The issue of change of condition is not properly before the Full Commission.
8. Plaintiff is not entitled to an assessment of attorney's fees against defendant, as defendant defended this matter upon reasonable grounds. N.C.G.S. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation at the rate of $347.22 per week for the time missed from work during which plaintiff received full salary through vested sick or vacation leave. Amounts which have accrued shall be paid in one lump sum, subject to attorney fees approved below.
2. Defendant shall pay to plaintiff permanent partial disability compensation at the rate of $347.22 per week for thirty weeks. Amounts which have accrued shall be paid in one lump sum, subject to attorney fees approved below.
3. Subject to the limitations of N.C.G.S. § 97-25.1, defendant shall pay all medical expenses plaintiff incurred or to be incurred as a result of her compensable injury by accident of May 22, 1998, to the extent the same are reasonably designed to effect a cure, provide relief, or lessen the period of plaintiff's disability, when bills for the same have been submitted in accordance with proper Industrial Commission procedure.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff herein is hereby approved for plaintiff's counsel and shall be paid by deducting twenty-five percent of the compensation due plaintiff and paying the same in one lump sum directly to plaintiff's counsel.
 ORDER
Plaintiff's motion for additional evidence is hereby, and the same shall be, denied. Although the issue of change of condition is not properly before the Full Commission, either party may request a hearing by filing an I.C. Form 33.
This the ___ day of February 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER